Michael Rotter, Ida Rotter, v. Sarah J. Scott and
  Sarah J. Scott, Administratrix, etc., Appellants,
  John M. Scott, Defendant. Consolidated with Sarah
  J. Scott, Appellant, v. Ida Rotter, Michael Rotter
  and John Scott.

**Trusts:** EVIDENCE: *Husband and wife.* When land was bought,
husband was able to pay for it. The wife had some money
then but it appears that she loaned some after the land was
bought. It is found that she contributed to the purchase to
some extent. Title was taken in the name of the husband
and so remained for over thirty years. The wife was appointed
his guardian upon allegation that he had undertaken to rent
*his* land and that there was danger of squandering his estate, real
and personal. As his administratrix she gave the names of his
heirs but did not assert any ownership in the land or assert
the claim of advanced purchase price. *Held,* that this was not
overcome by evidence of alleged declarations of the husband
such as, "He told me plainly she put her money that she had
in the place there. He said for safe keeping." "About the
time they bought he told me 'I and Jane can buy that farm,'
specifying her money with his." "He and Mrs. Scott had enough
to buy the farm and it was better to buy it than to put the
money on interest." And "He said if she put her money in
they could buy the place. They had bought and she had paid
all her money in."

EXPECTATION OF REPAYMENT. Where money contributed by a wife
towards the purchase of land conveyed to her husband was
given to him to be used and controlled by him as his own, and
without expectation of repayment, or having a special interest
in the land on account thereof, no trust therein resulted in her
favor.

*Appeal from Lee District Court.*—Hon. H. Bank, Jr.,
Judge.

Thursday, April 12, 1900.

John Scott died intestate, holding the record title to
certain real estate, leaving Sarah J. Scott, his widow, Ida
Rotter, his daughter, wife of Michael Rotter, and John M.

Scott, his son, his only heirs, surviving him. The first-entitled action is for the partition of said land, and therein Sarah J. Scott claims for herself that she is entitled to a one-third interest in said land, in addition to her rights as widow, by reason of having contributed one-third of the purchase price of the land under an understanding with her husband. As administratrix of the estate of John Scott, she claims that there are unpaid debts against the estate, and that partition should not be granted until these are paid. The second-entitled action is by Sarah J. Scott to establish her said claim in the land in addition to her rights as widow. Issues were joined in both cases as to said claim of Mrs. Scott in addition to her rights as widow. The cases were consolidated, and, upon hearing had, said claim of Mrs. Scott was dismissed, and decree rendered for partition of the land, and providing for the payment of debts. From this decree Sarah J. Scott for herself and as administratrix appeals.— *Affirmed.*

*Stutsman & Stutsman* for appellant.

*Miller & Beck* and *J. W. Rhodes* for appellee.

Given, J.—The land in controversy was purchased by John Scott in 1864, the title taken in his name, and he and his wife resided thereon from that time until his death, in 1896. The claim of Mrs. Sarah J. Scott is that at the time of their marriage, in 1864, she had a sum of money derived from her father's estate, and that at the time this land was purchased she gave that money towards paying the purchase price to the amount of one-third thereof, to-wit, twelve hundred dollars in cash, and a cow at forty dollars. She claims that she did so with the understanding that she should have and hold an interest in said land as her own in proportion to the amount advanced by her, that she does not know why the title was taken in the name of her husband, but says that the land was to be held in trust for her to the extent

of her interest therein.   We first inquire whether Mrs. Scott contributed to the purchase of the land.   That she had at the time of her marriage, and at the time the land was purchased, several hundred dollars in money, derived from her father's estate, is quite satisfactorily shown, but there is considerable conflict in the evidence as to whether all or any of it went into the purchase of the land.   It appears that Mr. Scott was then a man of considerable means, and able to pay for the land himself. There is also evidence tending to show that Mrs. Scott loaned money some time after the land was purchased, which must have been derived from her father's estate.   We are inclined to the conclusion, however, that Mrs. Scott did contribute some money towards the purchase of the land, but, in the view we take of the case, it is not necessary that we determine just what that amount was.   We next inquire whether the amount contributed by her was upon the understanding alleged, namely, that "she should have and hold an interest in said real estate as her own in proportion to the amount she advanced."   The land was purchased soon after their marriage, when Mr. Scott was prosperous, and well situated financially, and when his wife, no doubt, had confidence in his ability to manage his affairs successfully.   The title was taken in Mr. Scott's name, and so stood of record unquestioned until the commencement of these suits.   Mrs. Scott put whatever money she did into the land without making any written evidence of the understanding upon which she claims it was put in, and her claim as to this understanding has no support except in vague and unsatisfactory evidence of occasional and casual statements by Mr. Scott.   One witness says:  "He told me plainly she put her money that she had into the place there.   He said for safe-keeping."   William May, brother of plaintiff, says:  "About the time they bought it, Scott told me, 'I and Jane can buy that farm,' specifying her money in with his."   Mrs. William May testifies that

Mr. Scott said he and Mrs. Scott had enough money to buy the farm, and that it was better to buy it than to put the money on interest. Eliza May, sister of appellant, testifies: "He said, if she put her money in, they could buy the place. They had bought, and she had paid all her money in." As against this and some similar evidence, we have the further fact that in 1894, John Scott having become feeble-minded, appellant was appointed his guardian. In her petition for appointment she gave as a reason that Mr. Scott had undertaken to rent his land to three different persons, "and that unless a guardian be appointed, he will squander his estate, real and personal." She did not make claim of interest in the land in that proceeding, nor did she in leasing the land as guardian. In her report as administratrix she gave the name of the heirs and description of the land, but did not assert this disputed claim. Without referring further to the evidence, we will say that it fails to establish the alleged understanding, and leads us to the conclusion that whatever amount Mrs. Scott contributed of her money or property to the purchase of the land was given to her husband to be used and controlled by him as his own, and without expectation of repayment, or of having a special interest in the land on account thereof. That being true, no trust resulted in her favor. This conclusion renders it unnecessary that we notice the defenses of estoppel and of the statute of limitations. As already said, the decree makes proper provision for the payment of unpaid debts of the estate. As we view it, the decree is correct, and it is AFFIRMED.